UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 |
| | ) | |
| HECTOR AND ANA BRISENO, | ) | Bankr. No. 12 B 02903 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| HECTOR AND ANA BRISENO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adv. No. 12 A 00440 |
| v. | ) | Adv. No. 12 A 00441 |
| | ) | |
| MUTUAL FEDERAL SAVINGS AND LOAN ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | Honorable Janet S. Baer |

**MEMORANDUM OPINION**

Hector and Ana Briseno (the "Debtors") commenced the above-captioned adversary proceedings by filing two complaints under § 506(a) and Rule 3012 to determine the value of two pieces of real property they own in Chicago, one located at 4731 South Wood Street (the "4731 Property") and the other at 4750 South Wood Street (the "4750 Property").[1] Pursuant to § 1322(b)(2), the Debtors seek to "strip down" the unsecured portions of the first mortgage liens on these properties, which liens are held by Mutual Federal Savings and Loan Association (the "Creditor"). In addition, the Debtors filed a motion requesting that the Creditor's second mortgage lien on the 4731 Property be avoided under §§ 506(a) and (d). For the reasons set forth

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

below, the Court finds that, as of the petition date, the value of the 4731 Property was $70,000 and the value of the 4750 Property was $120,000. The Debtors are permitted to file an amended chapter 13 plan accordingly that "strips down" the Creditor's first mortgage liens on those properties. Additionally, the Court finds that the Creditor's second lien on the 4731 Property may not be "stripped off" under § 506(d), and, thus, the Debtors' motion will be denied without prejudice.

## Jurisdiction

The Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The matters are core proceedings under 28 U.S.C. § 157(b)(2)(K). Venue is properly placed in this Court pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's findings of fact and conclusions of law under Rule 7052.

## Facts

The Debtors filed a chapter 13 petition for relief on January 27, 2012.[2] On schedule A of their petition, the Debtors scheduled the value of the 4731 Property as $50,000 and the value of

---

[2] Over the course of their bankruptcy case, the Debtors have journeyed under rather difficult circumstances. Their first attorney sought and was granted permission to withdraw as counsel on July 26, 2012 because of irreconcilable differences. Subsequently, during a hearing on January 10, 2013, the Debtors fired their second attorney (after his request to withdraw). As a result, the Debtors currently represent themselves in a pro se capacity. While navigating through a chapter 13 case and lien strip proceedings without the benefit of counsel is difficult in and of itself, the Debtors here had the additional challenge of being unable to speak the English language. As a result, they enlisted the help of their son, who was sworn in as a witness, to translate for them during the evidentiary hearing that took place on April 4, 2013. The Court has considered all of these circumstances in arriving at its decisions in this Memorandum Opinion.

the 4750 Property as $43,000.[3] The 4731 Property is a three-unit dwelling with two rental units on the first floor and one unit on the second floor in which the Debtors reside. The 4750 Property consists of six rental units, four in the main structure and two in the coach house.

On the petition date, the two properties were encumbered by a total of three mortgage liens, all of which were held by the Creditor.[4] As to the 4731 Property, the Creditor holds a first mortgage lien with a secured claim of $150,638.89 pursuant to proof of claim 12-1 and a second mortgage lien with a secured claim of $12,833.67 pursuant to proof of claim 13-1. The Creditor holds the sole mortgage on the 4750 Property, with a secured claim of $209,869.63 pursuant to proof of claim 11-1. All three proofs of claim were filed on May 29, 2012 and were not objected to.

The Debtors' second modified plan, filed on April 23, 2012 (the "Plan"), proposes to bifurcate the Creditor's first mortgage lien on each property into a secured claim to the extent of the value of the collateral and an unsecured claim for the remainder of the indebtedness. Specifically, as to the 4731 Property, the Plan proposes to pay the Creditor a secured claim of $50,000, with fixed monthly payments of $1,273.50 at 4% interest, for an estimated total of $55,249.80. As to the 4750 Property, the Plan proposes to pay the Creditor a secured claim of $43,000, with fixed monthly payments of $1,112.50 at 4% interest, for an estimated total of $47,514.60. According to the Plan, the remainder of each claim shall be paid as a general

---

[3] The Court takes judicial notice of the dockets in the Debtors' bankruptcy case and adversary proceedings, including all documents and pleadings filed, all orders entered, and all arguments made at the hearings held before the Court during the pendency of this case. *See In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (authorizing a bankruptcy court to take judicial notice of its own docket).

[4] Although schedule D identifies the first mortgage lienholder on each property as "Mutual Federal Bank," the parties stipulate in the Joint Pretrial Statements that the "Defendant" holding all mortgages in both adversary proceedings is Mutual Federal Savings and Loan Association.

unsecured claim and the Creditor's liens will be released upon entry of a discharge order in the Debtors' bankruptcy case. Consistent with these proposals, the Debtors filed the two instant adversary proceedings seeking–in bankruptcy vernacular–to "strip down" the first mortgage liens pursuant to §§ 506(a) and 1322(b)(2).

Additionally, the Debtors seek to avoid–or "strip off"–the Creditor's second mortgage lien on the 4731 Property. To that end, on July 19, 2012, the Debtors filed a motion to determine the value of the property securing the second lien.[5] They argue that because the first mortgage lien on that property exceeds the value of the property, there is no equity to which the Creditor's second lien can attach. Thus, the Debtors maintain that the second lien is void pursuant to §§ 506(a) and (d).

The only dispute in these matters is the value of each property. On April 4, 2013, the Court held an evidentiary hearing in order to determine those values.[6]

For the 4731 Property, the Debtors submitted an appraisal completed by Lisa Majeske ("Majeske"), a certified real estate appraiser at the LM Appraisal Group, who used the sales

---

[5] The docket reveals that after the withdrawal of the Debtors' first attorney who filed the motion to strip off the Creditor's second lien, the motion was continued several times but neither responded to by the Creditor nor resolved in any way. The Creditor did file two objections to confirmation of the Debtors' Plan, both on September 19, 2012, which disputed the Debtors' appraisals of the properties for purposes of stripping all of the liens. Because the Debtors' motion to strip the second lien off the 4731 Property was never determined and because the resolution of the motion relies on the valuation of that property, the Court rules on the motion *infra* in this Memorandum Opinion.

[6] An evidentiary hearing to determine the value of the properties was originally set for January 10, 2013. Prior to the trial date, the Court was presented with what was purportedly an agreed order resolving the complaints. During proceedings on January 10, however, debtor Hector Briseno stated that no such agreement had been reached, and, after a rather heated exchange with the attorney who was representing the Debtors at that time, he ultimately fired that attorney (after counsel requested permission to withdraw). *See* Hr'g Tr. 36:10-16, Jan. 10, 2013. The Court re-set the evidentiary hearing to April 4, 2013 to give the Debtors time to retain new counsel, but they did not do so and proceeded in a pro se capacity instead.

4

comparison approach to value the property at $50,000 as of January 9, 2012. At the hearing, however, the Debtors offered the expert testimony of Emmanuel Luciano ("Luciano") of Luciano Appraisal Services. The Creditor objected and moved for a directed verdict, noting that Luciano was not included on the witness list in the Joint Pretrial Statement.[7] The Court reserved ruling on the objection and the motion and allowed Luciano to present his testimony.

Luciano, who is also a certified residential real estate appraiser, testified that the value of the property was $32,000 as of March 9, 2013. Luciano used the sales comparison approach to arrive at this figure and considered three comparable properties closely located to the 4731 Property in his calculation. He testified that all three comparables were subject to foreclosure and that he was unaware of whether or not they were vacant. Luciano also performed analyses using the income approach and the cost approach. The income approach yielded a value of $32,375; under the cost approach, Luciano determined that the value of the property was $32,300.

The Creditor disputes the Debtors' valuation of the 4731 Property. The Creditor submitted an appraisal completed by Robert Napoli ("Napoli"), who, like Luciano, is a certified residential real estate appraiser. Relying solely on the sales comparison approach, Napoli considered three comparable properties located near the 4731 Property and arrived at a valuation figure of $80,000 as of April 25, 2012. Unlike Luciano's comparables, which were all subject to

---

[7] Strangely, Luciano was included on the witness list in the Joint Pretrial Statement in Adversary No. 12 A 00440 in connection with the 4750 Property. His name was not disclosed, however, on the witness list in the Joint Pretrial Statement in Adversary No. 12 A 00441 in connection with the 4731 Property, the property for which he ultimately provided valuation testimony at trial.

5

foreclosure, Napoli testified that the three comparables he used were non-duress market transactions offered by willing sellers and purchased by willing buyers in fee simple.

For the 4750 Property, the Debtors submitted as Exhibit B to their complaint an appraisal completed by Luciano, valuing the property at $43,000 as of January 14, 2012. According to the Joint Pretrial Statement, however, the Debtors asserted that an appraisal conducted by Antionette Benison and Noel Luciano determined that the value of the property was $70,000 as of October 22, 2012. Notwithstanding either of these appraisals or figures, the Debtors failed to present any evidence at trial regarding the value of the property. As a result, the Creditor moved for dismissal of the adversary complaint in connection with the 4750 Property. The Court reserved ruling on the motion and directed the Creditor to present evidence as to the value of the 4750 Property and permitted the Debtors to cross-examine the Creditor's appraiser.

Napoli testified again on behalf of the Creditor with respect to the value of that property. He used the sales comparison approach and considered the same three comparable properties that he used in valuing the 4731 Property. Applying both quantitative and qualitative adjustments, Napoli valued the 4750 Property at $120,000 as of April 25, 2012.

Throughout the evidentiary hearing, both Luciano and Napoli described their respective qualifications and testified as to the research and methods they used in arriving at their conclusions. The Court had an opportunity to evaluate the credibility and demeanor of both appraisers during extensive testimony and to observe their composure, confidence, and consistency in responding to questions on cross-examination and on redirect. At the conclusion of the hearing, the Court took all matters under advisement, and all of those matters are now ready for ruling.

## Discussion

### A. Strip-Down of the First Mortgages

The Debtors request a judicial determination as to the value of the properties under § 506(a), as well as a release of the unsecured portions of the first mortgage liens pursuant to § 1322(b)(2). The value and extent of secured claims are governed by § 506(a), which provides in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a). Under § 506(a), a claim is bifurcated into secured and unsecured portions. *Id.*; *In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007). The claim is secured to the extent of the value of the creditor's interest in the collateral and unsecured to the extent that the amount of the claim exceeds the value of the collateral. *Wright*, 492 F.3d at 830. The Debtors seek to strip down the Creditor's liens to the value of its secured claims as determined under § 506(a).

Section 1322(b)(2) provides a vehicle for such strip-downs. Under the statute, a debtor may "modify the rights of holders of secured claims . . . or of holders of unsecured claims." 11 U.S.C. § 1322(b)(2). The "rights" of creditors referred to under § 1322(b)(2) are those provided under state law, including rights "reflected in ... relevant mortgage instruments, which are enforceable under [relevant state] law." *Nobelman v. Am. Savs. Bank*, 508 U.S. 324, 329 (1993). Among those rights is the right to retain a lien until the corresponding debt has been paid off. *Id.* Accordingly, modification under § 1322(b)(2) may include the stripping of liens. *In re Ginther*, 427 B.R. 450, 453 (Bankr. N.D. Ill. 2010); *Ryan v. United States (In re Ryan)*, Bankr. No. 11 B

34346, Adv. No. 11 A 1793, 2012 WL 4959632, at *5 (Bankr. N.D. Ill. Oct. 17, 2012), *aff'd*, No. 12-3398, 2013 WL 3380131 (7th Cir. July 8, 2013).

Although § 1322(b)(2) gives a debtor the power to strip a lien, secured rights may not be modified under the statute if they apply to a debtor's principal residence. 11 U.S.C. § 1322(b)(2) (stating that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence"); *Nobelman*, 508 U.S. at 332 (holding that § 1322(b)(2) bars the strip-down of partially undersecured liens on a debtor's principal residence). Here, the 4731 Property is a "mixed" property containing both rental units and the Debtors' principal residence. Although the Seventh Circuit has not yet considered the issue of whether § 1322(b)(2) precludes modification with respect to mixed properties that have both residential and investment characteristics, many courts have ruled that the statute does not apply to prohibit modification of the mortgage on a property where the debtor occupies only one unit of a multi-unit dwelling. *Hunt v. Urban P'ship Bank (In re Hunt)*, Bankr. No. 11 B 30609, Adv. No. 11 AP 01930, 2012 WL 1110058, at *1 (Bankr. N.D. Ill. Mar. 30, 2012) (collecting cases). The Court agrees and thus finds that the anti-modification provision under § 1322(b)(2) does not bar the Debtors from stripping down the Creditor's first mortgage lien on the 4731 Property, despite the fact that the Debtors use one unit of that property as their principal residence.

While the Debtors may be able to strip down the Creditor's first mortgage liens under § 1322(b)(2), that statute applies only if the Debtors' Plan can be confirmed. To that end, the Debtors seek to "cram down" their Plan over the objections of the Creditor under §

1325(a)(5)(B).[8] Specifically, the Debtors' Plan proposes to retain the properties and to make monthly payments to the Creditor equivalent to the market value of the collateral.

For purposes of determining the value of the Creditor's first mortgage liens in this case, the relevant date for valuation of the properties is the petition date, January 27, 2012. *See Marsh v. U.S. Dep't of Hous. & Urban Dev. (In re Marsh)*, No. 13 C 666, Adv. No. 11-227, 2013 WL 979299, at *2 (N.D. Ill. Mar. 13, 2013). The Debtors, as the parties seeking to strip the liens, bear the burden to establish the values of the properties. *See Hernandez v. TCF Banking & Savs. (In re Hernandez)*, 493 B.R. 46, 50 (Bankr. N.D. Ill. 2013). Once the Debtors' burden has been met, the Creditor must submit sufficient evidence to overcome the Debtors' valuation. *See id.*

### 1. The 4731 Property

Before turning to the value of the 4731 Property, the Court addresses the Creditor's objection that Luciano was not included on the witness list of the Joint Pretrial Statement as an expert witness. Federal Rule of Civil Procedure 26(a), made applicable by Federal Rule of Bankruptcy Procedure 7026, requires a party to disclose any person who may testify at trial as an expert witness. Fed. R. Civ. P. 26(a)(2). In addition, Federal Rule of Civil Procedure 37(c), made applicable by Federal Rule of Bankruptcy Procedure 7037, provides that a party who fails to identify a witness under Rule 26(a) is not permitted to examine the undisclosed witness at trial, unless the violation was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court has broad discretion to determine whether a Rule 26(a) violation is justified or

---

[8] Section 1325(a)(5)(B) provides, in relevant part, that "the court shall confirm a plan if ... the plan provides that ... the holder of [an allowed secured] claim retain the lien securing such claim until the earlier of ... the payment of the underlying debt determined under nonbankruptcy law ... or ... discharge under section 1328; and ... if ... property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts ...." 11 U.S.C. § 1325(a)(5)(B).

9

harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). In ruling on the Creditor's objection, the Court considers four factors: (1) the prejudice or surprise to the Creditor; (2) the ability of the Debtors to cure the prejudice; (3) the likelihood of disruption to the hearing; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier time. *See id.*; *Bronk v. Ineichen*, 54 F.3d 425, 432 (7th Cir. 1995).

The Debtors failed to comply with Rule 26(a) and the pretrial order by calling Luciano instead of Majeske, the expert included on the witness list. The Debtors' failure to disclose Luciano on the witness list, however, neither prejudiced nor surprised the Creditor. The Creditor conceded at the start of the hearing that its appraiser did, in fact, have an opportunity to review Luciano's appraisal. And, during the course of the trial, the Creditor capably and convincingly cross-examined Luciano with respect to the valuation approaches he used, the comparables he selected, and the values at which he arrived.

Further, the Debtors did not exhibit either bad faith or willfulness in failing to disclose Luciano as an expert witness at an earlier date. As discussed *supra*, after the withdrawal of their second attorney, the Debtors were proceeding without the benefit of counsel. There is little doubt that their failure to disclose Luciano as an expert who would be testifying at trial was neither a ploy nor a strategy to gain unfair advantage over the Creditor.

Pro se litigants do not enjoy an "unbridled license to disregard clearly communicated court orders," nor are they entitled to a general exemption from the rules of civil procedure or court-imposed deadlines. *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996). However, it is a court's obligation to ensure that a pro se litigant's claims are given a "fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428-29 (7th Cir. 1987); *Crosson v.*

*A.A. Fire Safety (In re Crosson)*, 333 B.R. 794, 798 (Bankr. N.D. Ill. 2005).

Given the circumstances surrounding the Debtors' failure to disclose Luciano as an expert witness, and to give the Debtors' claims a fair and meaningful consideration, the Court finds that the Rule 26(a) violation was harmless. Accordingly, the Creditor's objection is overruled and its motion for a directed verdict denied.

The Court now turns to the value of the 4731 Property. Valuation of assets is not an exact science; rather, it requires consideration of all of the factual elements of a particular case. *Hernandez*, 493 B.R. at 50. In particular, § 506(a) directs the Court to consider both "the purpose of the valuation and the proposed disposition or use of the property." 11 U.S.C. § 506(a); *see also Marsh v. U.S. Dep't of Hous. & Urban Dev. (In re Marsh)*, 475 B.R. 892, 895 (N.D. Ill. 2012).

Both Luciano and Napoli performed an analysis under the sales comparison approach. "Under the sales comparison approach the appraiser conducts a search of a similar real estate market to the subject property in order to find properties in similar situations to determine the value of the property in question." *In re Whitney Lane Holdings, LLC*, No. 08-72076-478, 2009 WL 2045700, at *8 (Bankr. E.D.N.Y. July 6, 2009). "However, as each real property is unique the appraiser will make adjustments to account for the differences between the subject property and the comparable properties in order to determine the appropriate value of the subject property." *Id.* Valuation is inherently subjective and depends on the judgment of the appraiser as to what constitutes a "comparable" property. "It is the role of the Court to sift through the appraisals and testimony and make a judgment as to the 'accuracy and credibility' of the appraisers." *Id.* at *2.

The Court was presented with two competing appraisals of the 4731 Property, each made by a qualified appraiser, stating significantly diverging values under the sales comparison approach. Luciano valued the property at $32,000, Napoli at $80,000. The Court finds that Napoli's appraisal and testimony are generally more credible and persuasive than the appraisal and testimony provided by Luciano. Significantly, Napoli's appraisal valued the property as of April 25, 2012, a date much closer to the petition date than the effective date of Luciano's appraisal of March 9, 2013. Perhaps most compelling, Napoli selected appropriate comparables which were all non-duress market transactions in fee simple title between willing buyers and willing sellers. His adjustments to those comparables were both justified and reasoanble. In contrast, the three comparable properties considered by Luciano were all subject to foreclosure.

In *Associates Commercial Corp. v. Rash*, the United States Supreme Court held that where the debtor proposes to retain the collateral at issue, that collateral should be valued using a replacement-value standard–"the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." 520 U.S. 953, 960 (1997); *see also In re Gonzalez*, 295 B.R. 584, 589-90 (Bankr. N.D. Ill. 2003). "Tying valuation to the actual 'disposition or use' of the property," the U.S. Supreme Court stated, "points away from a foreclosure-value standard when a Chapter 13 debtor, invoking cram down power, retains and uses the property." *Rash* 520 U.S. at 962; *see also HSBC Bank USA v. UAL Corp. (In re UAL Corp.)*, 351 B.R. 916, 920-21 (Bankr. N.D. Ill. 2006).

Because the Debtors here intend to retain the 4731 Property, "[t]hat actual use, rather than a foreclosure sale that will not take place, is the proper guide." *See Rash*, 520 U.S. at 963. Thus, the replacement value is the appropriate standard in this case. Luciano's lower valuation of

$32,000 is based on a comparison between the 4731 Property and three homes subject to foreclosure. Accordingly, his valuation is generally less credible than Napoli's because it relied exclusively on distressed properties.

Luciano also used the income approach and the cost approach to appraise the 4731 Property, arriving at values of $32,375 and $32,300 respectively.[9] Napoli quite rightly faulted Luciano for applying the income approach incorrectly and for failing to provide any basis for the figures he used in calculating value under the cost approach. Hr'g Tr. 84:16-21, 86:3-13, 87:2-8, Apr. 4, 2013. In addition, Napoli testified very credibly that he chose not to use the income approach because he was unable to find "sufficient data" to properly perform the calculations required under the approach. Hr'g Tr. 85:23-25. Similarly, Napoli stated that the cost approach lacks validity for valuing the 4731 Property. According to Napoli, the cost approach is best used when there has been minimal depreciation with respect to the property to be appraised. Hr.'g Tr. 63:11-17. Here, Napoli said, the 4731 Property is over one hundred years old, and, therefore, there has been "so much depreciation" that there is "no way" to "estimate what the cost" would be under the cost approach. Hr'g Tr. 65:17 - 66:5, 86:14-21. For all of the reasons above, the Court will disregard and place no weight on Luciano's opinions of value using the income and cost approaches.

---

[9] Under the income approach, value is determined based on "the amount a person would be willing to invest to receive the income that the property produces." *In re Gladstone Glen*, 739 F.2d 1233, 1239 (7th Cir. 1984). According to the testimony at trial, the income approach requires the calculation and application of "gross rent multipliers," which are determined by dividing the sales prices of rented comparables by the rent for those properties. Hr'g Tr. 32:22-25, 63:18-24, 84:16-21, Apr. 4, 2013. In contrast, the cost approach "represents the market value of the land as unimproved with the contributory value of the buildings in their 'as is' condition." *In re Anderson*, 88 B.R. 877, 882 (Bankr. N.D. Ind. 1988). The cost approach requires the appraiser to consider the cost of new improvements, less depreciation, added to the value of the land. Hr'g Tr. 63:11-17.

13

Based on the evidence presented and the credibility of the witnesses, the Court finds that the sales comparison approach is the appropriate method of valuation for the 4731 Property and that the appraisal and testimony provided by Napoli are generally more indicative of the property's fair market value. Napoli's valuation figure of $80,000, however, does not reflect a structural problem in the basement of the property. According to the testimony, Napoli was made aware of this problem with the property's foundation, but he made no adjustment for it because the Debtors did not provide him with a contractor's report or estimate regarding the structural damage. Hr'g Tr. 92:17 - 93:13.

Given all of the evidence, and taking into consideration the structural problem about which both parties testified, the Court adjusts Napoli's figure and finds that the value of the property as of January 27, 2012 was $70,000. The Debtors may strip down the Creditor's secured first mortgage lien accordingly, with the remainder to be paid as a general unsecured claim to be released upon the Debtors' successful completion of their plan and receipt of a discharge in chapter 13. The Debtors will be given leave to file an amended plan providing for the strip-down of the 4731 Property which reflects the judicially determined value of $70,000.

### 2. The 4750 Property

As to the 4750 Property, the Debtors failed to present any evidence at the hearing with respect to the value of the property. Although they submitted with their complaint an appraisal conducted by Luciano, asserted in the Joint Pretrial Statement that a subsequent appraisal had been completed by Antionette Benison ("Benison") and Noel Luciano, and included Benison on the witness list in the Joint Pretrial Statement, no one testified at trial on behalf of the Debtors regarding the value of the property.

According to the Debtors, their appraiser who was to provide valuation testimony was unable to stay for the duration of the hearing.[10] At the outset of the trial, the Court set out the schedule for the day, explaining that a midday recess would be required and that the trial would resume after the break and continue all afternoon if necessary. Debtor Hector Briseno stated only that he understood. No mention was made about possible scheduling conflicts, nor did the Debtors request that the witness testifying as to the value of the 4750 Property be permitted to provide her testimony before the recess. It was only when the trial resumed after the recess that the Debtors informed the Court that their witness was not available to testify. In response to the Court's question as to whether the Debtors were going to ask for additional time for the witness to come back, Hector Briseno stated that he was "wasting more money doing all that" and that he wanted "to take a decision already." Hr'g Tr. 49:19-21.

Thus, the Court was presented with only Napoli's appraisal testimony for the 4750 Property on behalf of the Creditor. Using the sales comparison approach, Napoli valued the property at $120,000. The Court finds the appraisal and testimony provided by Napoli credible. As a result, and because the Debtors failed to sustain their burden of proving that the property is worth less than the figure provided by the Creditor, the Court values the 4750 Property at $120,000 as of the petition date.

According to the Joint Pretrial Statement, the market value of the property was the sole fact in dispute in the adversary proceeding. The parties do not contest that the Debtors are legally entitled to strip down the Creditor's first mortgage lien according to that market value.

---

[10] Debtor Hector Briseno testified that his "witness had to ... leave because ... she had something else to do. She didn't want to stay." Hr'g Tr. 48:22-25.

Thus, the Court will permit the Debtors to strip down the Creditor's secured first mortgage lien on the 4750 Property by filing an amended plan that reflects the judicially determined value of $120,000, with the remainder to be paid as a general unsecured claim with the lien to be released upon the Debtors' successful completion of their plan and receipt of a discharge in chapter 13. As a result, the Creditor's motion to dismiss the complaint in Adversary No. 12 A 00440 will be denied.

### B. Strip-Off of the Second Mortgage on the 4731 Property

Finally, the Debtors seek to strip off the Creditor's second mortgage lien on the 4731 Property pursuant to §§ 506(a) and (d). According to the Debtors, the first lien on that property exceeds the value of the property, there is no equity to which the Creditor's second lien can attach, and the junior lien may, thus, be avoided under § 506(d).

Section 506(d) provides that "[t]o the extent that a lien secures a claim against the debtor that is not an *allowed secured claim*, such lien is void . . . ." 11 U.S.C. § 506(d) (emphasis added). The issue of whether a wholly unsecured lien is subject to strip-off pursuant to § 506(d) has been unsettled in this circuit until now. In July 2013, the Seventh Circuit Court of Appeals held that § 506(d) does not provide the vehicle for lien stripping in chapter 13 cases. *Ryan v. United States (In re Ryan)*, No. 12-3398, 2013 WL 3380131, at *5 (7th Cir. July 8, 2013). More specifically, the Court held that its interpretation of § 506(d) in *Dewsnup v. Timm*, 502 U.S. 410 (1992), applies in chapter 13 cases, as well as chapter 7. *Ryan*, 2013 WL 3380131, at *5. In *Dewsnup,* the Seventh Circuit held that § 506(d) precludes the strip-down of a creditor's lien on real property because a claim that has been bifurcated under § 506(a) is secured by a lien and has been fully allowed pursuant to § 502. *Dewsnup*, 502 U.S. at 417.

Although *Dewsnup* addressed the strip-down of liens and both that decision and *Ryan* are silent as to whether a wholly unsecured junior lien may be *stripped off* pursuant to § 506(d), the reasoning in those decisions clearly applies to strip-offs and strip-downs alike. That is, § 506(d) may be used to void only those liens that are not secured and have not been allowed. *See Ryan*, 2012 WL 4959632, at *3-4. Therefore, as long as a wholly unsecured junior lien has been allowed, it may not be avoided under § 506(d).

Here, as indicated above, the Court found that the value of the 4731 Property as of January 27, 2012 was $70,000. The amount owed on the first mortgage, $150,638.89, exceeds the value of the Property. Thus, the Creditor's second lien is wholly unsecured for purposes of § 506(d). However, the Debtors did not object to the claim and, therefore, the claim is allowed under § 502(a). *See* 11 U.S.C. § 502(a) ("A claim ... is deemed allowed, unless a party in interest ... objects."). Accordingly, the Debtors may not strip off the Creditor's second mortgage lien on the 4731 Property under § 506(d), and their motion will, therefore, be denied.[11]

### Conclusion

For the foregoing reasons, the Court values the 4731 Property at $70,000 and the 4750 Property at $120,000 and grants the Debtors leave to file an amended chapter 13 plan that accordingly strips down the Creditor's first mortgage liens on those properties consistent with the judicially determined values of the properties. In addition, the Court finds that the Creditor's junior lien on the 4731 Property may not be stripped off the property under § 506(d), and,

---

[11] The Court notes that, as discussed above in connection with the Debtors' adversary proceedings to strip down the Creditor's first mortgage liens, chapter 13 provides alternative means of voiding liens. Notwithstanding the Court's decision to deny their motion to strip off the Creditor's junior lien, the Debtors are not precluded from filing another motion for strip-off under a proper vehicle for lien stripping in chapter 13 cases.

17

therefore, the Debtors' motion will be denied without prejudice. A separate order will be entered consistent with this Memorandum Opinion.

**DATED:** August 2, 2013

**ENTERED:**

_____
JANET S. BAER
United States Bankruptcy Judge